**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2025-23

HARBOR FRONT
DEVELOPMENT, LLC,

    Plaintiff-Respondent,

v.

CLEAR SKIES TITLE AGENCY,

    Defendant-Respondent,

and

RYAN M. MULHOLLAND and
KEVIN J. MULHOLLAND,

    Defendants/Third-Party
    Plaintiffs-Appellants,

v.

EYAL SHAY,

    Third-Party Defendant-
    Respondent,

and

HARBORFRONT VILLAS

HOMEOWNERS' ASSOCIATION,

Third-Party Defendant.

_____

Argued January 28, 2026 – Decided July 13, 2026

Before Judges Gummer, Paganelli, and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000006-23.

Keith N. Biebelberg argued the cause for appellants (Biebelberg & Martin, attorneys; Keith N. Biebelberg and Avrin Slatkin, on the briefs).

Gregory J. Skiff argued the cause for respondents Harbor Front Development, LLC and Eyal Shay (A.Y. Strauss LLC, attorneys; Gregory J. Skiff, on the brief).

PER CURIAM

In this townhome-purchase dispute, defendants Ryan M. Mulholland and Kevin J. Mulholland appeal from orders denying their summary-judgment motion, granting the summary-judgment cross-motion of plaintiff Harbor Front Development, LLC (Harbor Front), and denying their reconsideration motion.[1]

---

[1] Defendant Ryan M. Mulholland is the son of Nanci Mulholland and defendant Kevin J. Mulholland. Because of their common last name, we use their first names to reference them. Because defendant Clear Skies Title Agency (Clear Skies) did not participate in this appeal, we refer to Ryan and Kevin collectively as "defendants."

In those orders, the trial court declared the closing was null and void and rescinded the recorded deed, and it held plaintiff had validly terminated the parties' purchase agreement and awarded plaintiff liquidated damages. We affirm the provisions in the orders declaring the closing null and void and rescinding the deed. Because of the existence of genuine issues of material fact, we reverse the provisions in the orders declaring valid the termination of the purchase agreement and awarding liquidated damages. We affirm in part and reverse in part the reconsideration order and remand for proceedings consistent with this opinion.

I.

Harbor Front is a real-estate developer and was the seller of the townhouse at issue in this litigation. Ryan and Nanci signed, as buyers, a May 1, 2021 agreement to purchase a to-be-built townhouse from Harbor Front for $550,000. Eyal Shay signed the agreement on behalf of Harbor Front. The estimated closing date was July 15, 2021.

Paragraph two of the purchase agreement, which was entitled "CLOSING OF TITLE," provided in part:

> Seller will provide Buyer with at least ten (10) days written notice of the closing date. When so scheduled, the date and time of closing shall be "OF THE ESSENCE." This means that failure by Buyer to close

3

at the time specified shall be considered a breach and default of this Agreement. If Buyer is unable to or refuses to close on the date and time specified by Seller, at Seller's option, Seller may exercise its rights set forth in Paragraph 16 of this Agreement or have Buyer reimburse Seller at or before closing for Seller's total reasonable carrying and administrative costs for postponing the closing to another time, date or place specified by Seller. Buyer agrees that Seller may cancel any Time of the Essence closing without penalty. Seller reserves the right, at its sole option, to conduct closing (i.e., transfer of title) by mail or electronically. Buyer will pay the balance of the Purchase Price due at closing of title by wire transfer.

Paragraph sixteen of the purchase agreement, entitled "DEFAULT OF BUYER; LIQUIDATED DAMAGES," provided:

If Buyer fails to make payments, violates any of the conditions or covenants or fails, for any reason, to complete the purchase in accordance with this Agreement, or if Buyer shall be declared bankrupt or insolvent or shall make an assignment for the benefit of any creditors, or shall be placed under the control or under the custody of any court, or otherwise breaches this Agreement, Buyer will be in default. If Buyer is in default, this Agreement at the option of Seller, may be terminated, and all deposits made by Buyer in an amount equal to ten percent (10%) of the total purchase price, plus the contract price of any payments for options and extras, shall be retained by Seller as liquidated damages. Liquidated damages are a fixed amount to be paid to Seller which the parties agree will be a reasonable estimate of the damages in the event of Buyer's default, since Seller's actual damages would be difficult to establish. If the deposit monies are less than that liquidated sum and Buyer fails to pay the additional

4

sums after demand, then Seller may institute legal proceedings to recover the remaining amount due. If Seller elects to retain money as liquidated damages, this Agreement shall be of no further effect in which event Seller agrees to return to Buyer all excess money above the described sum previously paid by Buyer, if any. No delay or forbearance by Seller in exercising any right or remedy hereunder shall be deemed to be a waiver thereof[.]

Harbor Front delayed the estimated closing date multiple times. A November 28, 2022 addendum to the purchase agreement removed Nanci from the contract and added Kevin as an additional buyer. An undated addendum set $558,000 as the purchase price, indicated Harbor Front would provide defendants with an "$8,000 credit for closing costs and prepaid expense[s,]" and stated the closing would "take place in or before December 20, 2022." The addendum provided that "[i]n all other respects the [c]ontract shall remain in effect as is."

The trial court found "a question of fact exists as to the date upon which [p]laintiff provided [defendants] with written notice of the December 20, 2022 [c]losing." Defendants' counsel certified he and Harbor Front's counsel, "[a]fter all the[] delays by [Harbor Front]," had scheduled the closing for December 20, 2022, but did not say when they agreed to the December 20 closing date.

5

According to defendants' counsel, Shay signed the addendum on behalf of Harbor Front on December 19, 2022.

Clear Skies acted as the closing escrow agent for both parties. In a November 28, 2022 "Escrow Closing Letter," Harbor Front's counsel provided Clear Skies with Harbor Front's closing documents to be held in escrow. He instructed that Clear Skies could not release the documents from escrow until certain conditions were met, including receipt of "written confirmation by email" from Harbor Front or its legal representative authorizing Clear Skies "to close the transaction and release [Harbor Front's c]losing [d]ocuments from escrow." Shay forwarded those documents in a November 30, 2022 email to a Clear Skies representative, copying defendants' counsel and a representative of defendants' lender, Paramount Residential Mortgage Group, Inc. (PRMG), on the email.

On the December 20, 2022 closing date, Ryan appeared at Clear Skies's office. Emails between the parties that day indicate they continued to negotiate certain aspects of the transaction. For example, in emails exchanged at 1:39 p.m. and 2:28 p.m., the parties confirmed defendants had accepted Harbor Front's offer to waive the first two years of "common charges." At some point that day, PRMG submitted a proposed "[b]uydown [a]greement" for Harbor

A-2025-23

Front's execution. A Clear Skies representative sent that proposed agreement, as well as a "Final seller CD" and an American Land Title Association (ALTA) settlement statement to Harbor Front's counsel for execution in an email sent at 2:31 p.m. In a 5:15 p.m. email to "all," the Clear Skies representative stated, "the closing has been wrapped up. As of right now, I am waiting for the following to be completed from the seller's end," listing the wiring of the deposit funds, a "[s]igned [s]eller CD and A[LTA]," and a "[s]igned [b]uydown [a]greement by [s]eller."

In an email sent on December 21 at 10:56 a.m., defendants' counsel asked Shay about "the status of the signed closing documents." Shay responded two minutes later with an instruction to "[p]lease send it via DocuSign." In an 11:31 a.m. email, Shay stated "[p]lease send only A[LTA] and [CD] as seller will not sign the buy down agreement." In an 11:42 a.m. email, Harbor Front's counsel asked the Clear Skies representative to send the documents to Shay or to him. At 4:19 p.m., the Clear Skies representative sent an email to Harbor Front's counsel, stating "[h]ere you go." At 7:57 p.m., a PRMG representative sent an email "on behalf of [PRMG's] borrower" to Harbor Front's representatives, complaining about Harbor Front's failure to execute an addendum regarding an

"$8,000 seller concession" and the buydown agreement and stating the closing "will go on hold" until all documents were signed.

In an email sent at 10:19 a.m. on December 22, the Clear Skies representative asked Harbor Front's counsel if Harbor Front had signed the buydown agreement. Shay responded to that email at 10:34 a.m., stating Harbor Front was "NOT SIGNING ANY OTHER DOCUMENT BESIDES WHAT WAS PROVIDED SO FAR. TOE-will be sent tomorrow." We understand Shay's TOE reference meant "time of the essence." In a 2:52 p.m. email to Shay and Harbor Front's counsel, the PRMG representative stated he had called Shay multiple times but had not received a return call and suggested Shay "seem[ed] to have his own motives for not wanting this transaction to consummate." He advised that PRMG would "continue to hold the funding of this transaction" and would ask defendants' counsel to "send out a TOE as of today for [Harbor Front]'s failure to perform on [its] end on items already agreed to and signed off on from the purchase addendum."

In an email sent on December 22 at 4:37 p.m. with copies to Harbor Front's counsel, the PRMG representative informed the Clear Skies representative that PRMG and Clear Skies would "be working . . . to make any necessary changes for tomorrow noon closing. We are just removing the seller paid buy down from

[the] loan and it will be sent . . . to finalize." At the same time, Harbor Front's counsel sent an email to the Clear Skies representative directing her not to deliver the deposit money or "take any steps to effectuate a closing of the sale." At 5:58 p.m., the PRMG representative sent the Clear Skies representative an email stating, "this transaction is considered closed as of December 20, 2022[,] as we do not need any documentation from the sellers. The closing package they signed stands." In an email sent to the Clear Skies representative at 6:33 p.m., the PRMG representative stated, "[t]here are a handful of revised docs that will need to be resigned, but nothing on our end the seller needs to sign. We removed the buydown." The PRMG representative copied Harbor Front's counsel on both of those emails. In an email sent at 9:46 p.m. to Shay and Harbor Front's counsel, the Clear Skies representative confirmed "no funds will be disbursed" and stated it was her "understanding we are working to reclose this transaction tomorrow with the seller credit added to the cd and not buydown. Am I missing something?" The record does not contain a response to that email.

In a December 22, 2022 letter Harbor Front's counsel sent by email to Ryan, his counsel, and PRMG, Harbor Front terminated the purchase agreement, citing defendants' purported failure to "meet [their] obligation to close on a timely basis," the demand Harbor Front execute the buydown agreement, the

9

communications from PRMG, and defendants' allowing PRMG to "hijack" the transaction. The record is not clear when on December 22 Harbor Front sent that email or whether it was sent before the evening emails sent by PRMG. Additional emails were exchanged on the morning of December 23. Harbor Front's counsel sent the Clear Skies representative an email reminding her she was "not authorized to proceed" and stating "[s]eller has communicated with [b]uyer, who is fully aware of [s]eller's position" and that he "did not want [his] silence to be mistaken for a change in [s]eller's position." It is not clear when Harbor Front's counsel sent that email; he did not copy PRMG, defendants, or their counsel on it.

Clear Skies completed the closing on December 23, 2022, in Ryan's presence. Clear Skies disbursed the payment funds to Harbor Front. On January 13, 2023, Clear Skies submitted the deed conveying title to defendants to be recorded, and it was recorded.

On or about January 13, 2023, Harbor Front filed a verified complaint against Ryan, Kevin, and Clear Skies, seeking a judgment declaring Clear Skies's delivery of Harbor Front's closing documents illegal and of no force or effect, the purported closing "null and void," and Harbor Front validly terminated the purchase agreement and was entitled to an award of the

contractual liquidated damages.  Harbor Front pleaded two causes of action:  one for declaratory judgment and one for breach of fiduciary duty as to Clear Skies.

On November 9, 2023, defendants moved for summary judgment "and for their dismissal from this case as purported necessary parties."  Harbor Front cross-moved for summary judgment and subsequently moved for summary judgment as to Clear Skies.  During oral argument, Clear Skies's counsel advised the court Clear Skies admitted it should not have proceeded with the closing and did not challenge Harbor Front's requested relief of recission.

On January 5, 2024, the trial court entered orders accompanied by a statement of reasons denying defendants' motion and granting Harbor Front's cross-motion and its motion as to Clear Skies.  In the orders, the court declared Harbor Front had validly terminated the purchase agreement pursuant to paragraphs two and sixteen of the purchase agreement and was entitled to ten percent of the total purchase price as liquidated damages, the December 23, 2022 closing was null and void, and the recording of the deed was rescinded.  It ordered Harbor Front to return to defendants $521,489.85, representing the closing funds it had received less the $55,000 liquidated-damages award.[2]

---

[2] Defendants apparently had filed counterclaims against Harbor Front and third-party claims against Shay and Harborfront Villas Homeowners' Association

A-2025-23

In the statement of reasons, the court found it undisputed that Clear Skies had proceeded with the closing and delivered Harbor Front's closing documents out of escrow without authority to do so. Accordingly, the court granted Harbor Front's motion as to Clear Skies and as to Harbor Front's claim the closing was null and void and ordered the rescission of the recorded deed.

In deciding Harbor Front's cross-motion for summary judgment on its claim seeking a declaration its termination of the purchase agreement was valid, the court found questions of fact existed as to when Harbor Front provided written notice of the December 20 closing date to defendants and whether it had provided them with ten days' notice of the closing and the closing, thus, was "of the essence" pursuant to paragraph two of the purchase agreement. The court, however, determined "no question [existed] that all parties to the transaction knew of and agreed to the December 20, 2022 [c]losing date." The court interpreted paragraph two as giving Harbor Front the right to exercise its rights

---

(HVHA). The parties did not include copies of those claims in the appellate record. According to defendants, they settled their claims with HVHA. In one of the January 5, 2024 orders, the court granted Harbor Front's cross-motion for summary judgment as to defendants' counterclaims and Shay's cross-motion as to its claim against him and dismissed those claims with prejudice. Defendants did not brief issues regarding those dismissals on appeal and, thus, waived them. See Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) ("An issue not briefed is deemed waived on appeal.").

under paragraph sixteen of the purchase agreement, including its rights to termination of the agreement and liquidated damages, if defendants failed to close on the closing date set by Harbor Front. The court, consequently, granted that aspect of the cross-motion, declaring the termination valid and awarding liquidated damages.

In a February 21, 2024 order, the court denied defendants' subsequent reconsideration motion. In an accompanying statement of reasons, the court found the undated addendum contained a "mutual agreement" to the December 20 closing date that "obviated the need for the ten days' notice" required in paragraph two of the purchase agreement. The court also found, for the first time, Harbor Front "was justified [in] treating [defendant]s' failure to fund the purchase price on December 20, 2022 as [an] anticipatory breach . . . [and p]laintiff was clearly entitled to treat the contract as terminated."

On appeal, defendants argue the court erred in granting summary judgment on Harbor Front's termination and liquidated-damages claims when it found genuine issues of material facts existed, in finding an anticipatory breach in its reconsideration decision when a genuine issue of material fact existed as to whether December 20, 2022 was time of the essence, and in rescinding the transaction and awarding liquidated damages based on the conduct of PRMG.

A-2025-23

## II.

We review summary-judgment orders "de novo, applying the same standard that governed the trial court's determination." Padilla v. Young Il An, 257 N.J. 540, 547 (2024). Summary judgment is proper if, viewing the evidence in a light most favorable to the non-moving party, the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)).

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)); see also R. 4:46-2(c). To rule on summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App.

Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)) (internal quotation marks omitted).

We review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

We address first the court's declaration the closing was null and void and consequent order of rescission of the recorded deed. That determination was based on Clear Skies's lack of authority to close the transaction and to deliver Harbor Front's closing documents out of escrow. No genuine issue of material fact exists regarding that lack of authority. In the November 28, 2022 escrow closing letter, Harbor Front's counsel expressly instructed Clear Skies it could not release those documents until it received "written confirmation by email" from Harbor Front or its legal representative authorizing Clear Skies "to close the transaction and release [Harbor Front's c]losing [d]ocuments from escrow." Despite not receiving that written confirmation or authorization, Clear Skies closed the transaction and released Harbor Front's closing documents from escrow. As Clear Skies conceded and as the court correctly held, that closing and document release should not have occurred.

"The judicial remedy of rescission is rooted in considerations of equity." Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 527 (2008); see also Benjoray, Inc. v. Acad. House Child Dev. Ctr., 437 N.J. Super. 481, 488 (App. Div. 2014) (same). "Rescission remains a form of equitable relief in whatever setting its need arises, and courts wielding that remedy retain the discretion and judgment required to ensure that equity is done." Rutgers Cas. Ins., 194 N.J. at 528. "In furtherance of that objective, a court may shape the rescission remedy in order to serve substantial justice." Id. at 529. Rescission voids a transaction "ab initio, meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose." First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 137 (2003) (quoting Black's Law Dictionary 1568 (7th ed. 1999)).

Considering Clear Skies's undisputed lack of authority to close the transaction and release Harbor Front's documents from escrow, we discern no abuse of discretion or misapplication of the law in the court's declaration the closing was null and void or its rescission of the recorded deed. That the purchase agreement provided for liquidated damages in the event of a breach does not render inequitable or improper the rescission of a deed wrongly recorded after an unauthorized release of documents that should not have occurred. Accordingly, we affirm provisions of the orders granting Harbor

16

Front summary judgment on its claim the closing should be declared null and void and directing the rescission of the recorded deed.

We next address the court's conclusions regarding Harbor Front's claim it had a contractual right to terminate the purchase agreement and to an award of liquidated damages. In considering those conclusions, we analyze the language of the purchase agreement under the familiar rules of contract interpretation. In doing so, "[b]ecause contract interpretation is a question of law we review de novo, we 'pay no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co., 258 N.J. 286, 303 (2024) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

"The plain language of the contract is the cornerstone of [a court's] interpretive inquiry." Extech Bldg. Materials, Inc. v. E&N Constr. Inc., 262 N.J. 271, 280 (2025) (alteration in original) (quoting Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020)). "[U]nambiguous contracts will be enforced as written unless they are illegal or otherwise violate public policy." Ibid. (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). The "court's task was 'not to rewrite a contract for the parties better than or

different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer, 205 N.J. at 223).

Paragraph two of the purchase agreement states in relevant part:

> Seller will provide Buyer with at least ten (10) days written notice of the closing date. When so scheduled, the date and time of closing shall be "OF THE ESSENCE." This means that failure by Buyer to close at the time specified shall be considered a breach and default of this Agreement. If Buyer is unable to or refuses to close on the date and time specified by Seller, at Seller's option, Seller may exercise its rights set forth in Paragraph 16 of this Agreement . . . .

The record does not reveal when Harbor Front gave defendants notice of the December 20 closing date or when counsel reached agreement to schedule the closing on December 20. Thus, the court correctly concluded a genuine issue of material fact existed as to whether December 20 was time "of the essence" under paragraph two. The conclusion is supported by the fact that Harbor Front's representative Shay sent an email at 10:34 a.m. on December 22 stating a time-of-the-essence letter would be sent the next day and in an email sent later that day, PRMG's representative stated he would ask defense counsel to send a time-of-the-essence letter.

Setting aside that genuine issue of material fact, the court granted Harbor Front summary judgment because it concluded defendants had breached or

anticipatorily breached the purchase agreement. Paragraph sixteen of the purchase agreement gave Harbor Front the right to terminate the agreement and to liquidated damages if defendants defaulted by "fail[ing] to make payments, violat[ing] any of the conditions or covenants or fail[ing], for any reason, to complete the purchase in accordance with this Agreement." The court found defendants had defaulted under paragraph sixteen by failing to complete the purchase of the townhouse on December 20 and, pursuant to paragraph two, had breached or anticipatorily breached the purchase agreement by failing to close on December 20.

However, viewing the evidence in a light most favorable to defendants as we must in a summary-judgment motion, a reasonable factfinder could conclude the parties continued to negotiate the terms of the agreement through December 20 and the days following and that even though PRMG had withdrawn the buydown agreement and defendants were prepared to proceed with the closing, Harbor Front declined to close. Thus, a genuine issue of material fact existed regarding whether defendants had defaulted, which party had refused to close, and whether Harbor Front was entitled under paragraph sixteen of the purchase agreement, to terminate the agreement and to recover liquidated damages. A court should grant summary judgment "[o]nly 'when the evidence is so one-sided

that one party must prevail as a matter of law.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) (internal quotation marks omitted). Harbor Front did not meet that standard regarding its entitlement to terminate the purchase agreement and to liquidated damages. The court erred in granting summary judgment on that aspect of Harbor Front's cross-motion.

In sum, we affirm in part and reverse in part the January 5, 2024 orders granting Harbor Front's motion and cross-motion for summary judgment and the February 21, 2024 order denying defendants' reconsideration motion. We affirm the portions of the January 5, 2024 orders declaring the December 23, 2022 closing null and void and rescinding the recorded deed and the denial of reconsideration of those portions of the orders. We reverse the portions of the January 5, 2024 orders that declared Harbor Front entitled to terminate the purchase agreement and awarded liquidated damages, as well as the denial of reconsideration of those portions of the orders in the February 21, 2024 order. We remand for proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

20

A-2025-23